IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ROBIN R. BLEVINS,

        Plaintiff,

vs.                               **Case No. 08-4055-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

### MEMORANDUM AND ORDER

Plaintiff has filed applications for social security disability benefits and supplemental security income benefits. Plaintiff alleges an onset date of February 1, 2003. The applications were denied by defendant on the basis of the July 27, 2006 opinion of an administrative law judge (ALJ). Following the ALJ's decision, plaintiff appealed the decision to the Appeals Council of the Social Security Administration. Plaintiff submitted additional evidence to the Appeals Council in making the appeal. The Appeals Council denied plaintiff's appeal on March 11, 2008, thus making the ALJ's decision the decision of defendant. This case is now before the court to review defendant's decision to deny benefits.

I.  STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d

983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn, 21 F.3d at 984. The court may not reverse the defendant's choice between two reasonable, but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

II. ALJ DECISION (Tr. 18-25).

There is a five-step evaluation process followed in these cases. First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant

work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's applications should be denied on the basis of the fifth step of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

More specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, although near the time of the decision she did work for one hour a day as a house cleaner.  He determined that plaintiff has the following "severe" impairments:  mood disorder, disorders of the back, and chronic obstructive pulmonary disease (COPD).  The ALJ concluded that plaintiff's impairments did not together or separately meet or equal the requirements of one of the listed impairments in the Social Security regulations.  (Tr. 21).

According to the ALJ, plaintiff retained the residual functional capacity (RFC):

> to perform light exertional work.  She is able to lift/carry 20 pounds occasionally and 10 pounds frequently.  She is able to sit for a total of 6 hours of an 8-hour workday, and stand/walk for a total of 6 hours of an 8-hour workday.

(Tr. 21). Regarding mental limitations, the ALJ determined that:

3

>     [plaintiff's] mood disorder results in Part B functional
>     limitations that are mild in her activities of daily
>     living and concentration, persistence, or pace; and
>     moderate in social functioning.  There is no evidence
>     that she has experienced repeated episodes of
>     decompensation.

(Tr. 21).

The ALJ further found that plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  (Tr. 22).

The ALJ decided that plaintiff's RFC left her unable to perform her past relevant work as a certified nursing assistant, deli clerk, activity director and waitress.  (Tr. 23).  But, based upon the testimony of a vocational expert, the ALJ concluded that plaintiff could perform such occupations as a hand packer, maid, and produce weigher.  (Tr. 24).

III.  ARGUMENTS

    A.  <u>Assessment of mental and physical RFC</u>.

Plaintiff's first argument is the ALJ erroneously evaluated plaintiff's physical and mental RFC.  Plaintiff asserts that the ALJ's assessment is erroneous for several reasons.

Initially, plaintiff argues that the hypothetical question posed by the ALJ to the vocational expert did not incorporate the findings the ALJ made regarding plaintiff's <u>physical</u> limitations. This would appear to be a problem if the physical impairments in the hypothetical were less severe than the findings made by the ALJ.  In this instance, however, the vocational expert testified

4

that a person suffering from more severe physical impairments than the ALJ made in his findings, maintained the RFC to perform three different occupations. Therefore, we do not find that this argument justifies the reversal of the decision to deny benefits.

Plaintiff's next point of attack is that the ALJ erroneously assessed plaintiff's <u>mental</u> capacity for employment. As recounted previously, the ALJ made a finding that plaintiff's "mood disorder" produced "mild" functional limitations in her activities of daily living and concentration, persistence or pace, and "moderate" limitations in social functioning. (Tr. 21). The ALJ further stated in his decision that he accepted the mental assessment by Dr. Robert Schulman "since it is consistent with the medical record." (Tr. 23). The ALJ summarized Dr. Schulman's assessment as follows:

> He concluded that, although the claimant does experience some reduced concentration, she is capable of remembering, understanding, and carrying out 3-4 step instructions and tasks. Dr. Schulman noted that the claimant is goal directed, capable of decisions, and able to casually relate to others. However, he cited her problems in getting along with others and said that she may be better suited to a setting where she does not have direct contact with the public and may do best on repetitive work. Dr. Schulman asserted that the claimant is able to "meet ordinary standards and cope with regular supervision." Out of 20 possible areas of work-related mental limitations, Dr. Schulman determined that the claimant would have moderate work-related limitations in only 2 areas, interacting appropriately with the general public and maintaining attention and concentration for extended periods. Dr. Schulman also completed a Psychiatric Review Technique Form in May 2004 in which he concluded that the claimant's depression/anxiety disorder results in Part B functional limitations that are mild in

>       activities of daily living and maintaining concentration,
>       persistence, or pace; and moderate in social functioning.
>       He found that she had not experienced episodes of
>       decompensation.

(Tr. 23). On this basis, the ALJ concluded that plaintiff could "follow work-related instructions up to [] SVP-2 level work, make judgments, and maintain a competitive pace at a goal oriented rate;" he further concluded that plaintiff "is limited to occasional interaction with the public and co-workers." (Tr. 23). These conclusions were incorporated in the ALJ's hypothetical question to the vocational expert, where he asked the vocational expert whether jobs could be performed by a person who could follow instructions at the SVP two work level, make simple work-related instructions or decisions, interact occasionally with the public and co-workers and maintain a competitive pace at a goal-oriented rate. (Tr. 804-05).

There appear to be three problems with the ALJ's assessment of plaintiff's mental RFC. First, the ALJ apparently did not accept or at least explain why he did not accept the conclusion of Dr. Schulman that plaintiff suffered "moderate" limitations in the ability to maintain attention and concentration. Dr. Schulman stated on the Psychiatric Review Technique Form that plaintiff had "mild" difficulties in maintaining concentration, persistence and pace. (Tr. 542). However, Dr. Schulman also stated on the Mental Functional Capacity Assessment form that plaintiff was "moderately limited" in her ability to maintain attention and concentration for

6

extended periods. (Tr. 518). We conclude that the ALJ did not find that plaintiff had "moderate" limitations in attention and concentration because, even though the ALJ said he accepted Dr. Schulman's mental assessments, the ALJ findings at Tr. 21 state that plaintiff had "mild" limitations in concentration, persistence and pace and the ALJ's hypothetical question to the vocational expert asked her to assume the capacity to maintain "a competitive pace at a goal-oriented pace."

The conclusions on the Mental Functional Capacity Assessment form (where Dr. Schulman noted a "moderate" limitation in concentration) are favored over the Psychiatric Review Technique Form (where Dr. Schulman noted a "mild" limitation in concentration) in the assessment of RFC. See McMillan v. Barnhart, 2006 WL 4050691 (D.Kan. 2006) (citing SSR 96-8p). This is one reason to question the ALJ's assessment. In addition, the ALJ did not explain why he accepted one of Dr. Schulman's assessments over the other or how the "moderate" limitations found by Dr. Schulman are consistent with the ALJ's assessment or the hypothetical question posed to the vocational expert.[1] This kind of discussion

---

[1] A residual functional capacity assessment form completed on September 27, 2001 by Dr. Dean T. Collins indicated that plaintiff was moderately limited in her ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and moderately limited in her ability "to accept instructions and respond appropriately to criticism from supervisors." (Tr. 279). This part of the record is not discussed by the ALJ and generally

is important for judicial review of an ALJ's RFC assessment.  <u>Tracy v. Astrue</u>, 518 F.Supp.2d 1291, 1298-99 (D.Kan. 2007) (criticizing the failure to link and relate evidence to RFC findings and the failure to explain inconsistencies and ambiguities in the opinion, citing <u>Kency v. Barnhart</u>, 2004 WL 5542829 (D.Kan. 2004)); see also, <u>Blanton v. Astrue</u>, 2008 WL 4587923 (D.Kan. 2008) (an ALJ must explain how material inconsistencies or ambiguities in the evidence were considered and resolved); <u>Kingsbury v. Astrue</u>, 2008 WL 4826139 (D.Kan. 2008) (remand ordered where ALJ offers no explanation for not including all of the moderate limitations found by one doctor in the ALJ's opinion regarding RFC).  Finally, the failure to accurately set forth all of plaintiff's limitations in the hypothetical question posed to the vocational expert can lead to error at step five of the sequential analysis.  The testimony of the vocational expert is relied upon by the ALJ at step five to provide substantial evidence to support the conclusion that plaintiff can perform occupations which exist in significant numbers in the economy.  If the hypothetical question does not relate with precision all of plaintiff's impairments, then the answer of the vocational expert cannot constitute substantial evidence for the ALJ's conclusions.  <u>Kingsbury</u>, 2008 WL 4826139 (citing <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991)). In this case it is possible that the ALJ erred in his hypothetical

---

bolsters plaintiff's argument in this case.

question by omitting as a mental impairment a moderate limitation in the ability to maintain attention and concentration for extended periods.  The ALJ's opinion does not explain why this limitation is omitted or why this limitation is somehow subsumed in the ALJ's phrasing of the hypothetical question.

In summary, we believe this case should be remanded for further proceedings regarding plaintiff's residual functional capacity.

B.  Credibility

Plaintiff asserts that the ALJ's credibility determinations are not supported by the record.

Plaintiff testified that she can lift 10 pounds, walk two to three blocks, and stand or sit for 20 minutes at a time.  (Tr. 794).  She said that her "asthma" or COPD was her worst condition. (Tr. 794).  Plaintiff testified that she has periods of depression two or three times a month.  During these periods, she does virtually nothing.  (Tr. 796-97).

Plaintiff testified that she attends church once or twice a year.  (Tr. 780).  Previously, she attended church frequently.  She said that she visits with her mother once a week and goes out once every two weeks.  (Tr. 780).  Plaintiff stated that she makes her meals, does dishes, and vacuums once a week.  (Tr. 782-784). Plaintiff does not do her laundry or yard work and her personal hygiene takes time.  (Tr. 783-84).  Plaintiff plays solitaire,

9

reads, does puzzles and tries to do exercises recommended by a therapist. (Tr. 785-86). She pays her own bills. (Tr. 787). Plaintiff drives, although many stops may be required, and she attends the school functions of her 15-year-old son, who is cared for by plaintiff's mother. (Tr. 781).

The ALJ made the following statements at Tr. 22-23 which appear intended to support his credibility finding. The ALJ noted that plaintiff had a "full schedule" of activities of daily living. He found that plaintiff had "an adequate though spotty work record." The ALJ determined that plaintiff's alleged back and neck pain were not supported by objective medical evidence and that pulmonary function testing in November 2002 showed only mild obstructive lung defect and normal breath sounds. He found that plaintiff's asthma/COPD symptoms were normally well-controlled with inhalant medications. The ALJ also found that after a "brief psychiatric admission" plaintiff's mental impairment had "stabilized" and that he accepted the mental assessment by Dr. Schulman "since it is consistent with the medical record."

Plaintiff criticizes the ALJ's credibility analysis on several grounds. Among these criticisms are the following. Plaintiff asserts that the ALJ unfairly relies upon plaintiff's activities of daily living and does not account at all for plaintiff's testimony that she has periods of depression when she can do nothing at all. Plaintiff asserts that the ALJ did not appear to consider evidence

in the medical records which showed decreased range of motion, decreased grip strength, giveaway weakness, diminished sensation and severe difficulty with orthopedic maneuvers.  Plaintiff also contends that the ALJ failed to consider plaintiff's GAF scores which support the credibility of plaintiff's alleged mental impairments.

In response, defendant makes reference to a medical report from Dr. Khanna, which is not discussed in the ALJ's opinion. Defendant also refers to plaintiff's activities of daily living and states that plaintiff said she could probably walk a mile if she stopped smoking.

The court's role in this matter is not to reweigh the evidence or substitute our judgment for that of defendant.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Nevertheless, credibility findings should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Evidence favorable to a claimant should not be ignored by the ALJ. Owen v. Chater, 913 F.Supp. 1413, 1420 (D.Kan. 1995).

In this case, the court believes that the ALJ failed to make a judgment upon the credibility of plaintiff's testimony regarding the periods of depression she allegedly suffers two or three times a month.  The ALJ also did not address the GAF scores which generally support the severity of plaintiff's alleged mental

11

impairments.  We believe defendant overstates the support the ALJ's conclusions obtain from plaintiff's activities of daily living. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (sporadic performance of household tasks or work does not demonstrate capacity to engage in substantial gainful employment). Those activities do not appear to the court to provide substantial evidence against plaintiff's claims of disability.  Nor do they specifically rebut plaintiff's claims regarding periods of depression when she does virtually nothing.

The court concludes that the ALJ's credibility findings are not supported by the record as recounted in the ALJ's decision and reviewed by the court.

    C.   Evidence submitted to Appeals Council

Plaintiff also contends that this case should be remanded because the Appeals Council failed to properly consider evidence submitted by plaintiff after the decision of the ALJ.  Because of this court's ruling upon plaintiff's other arguments, we do not believe it is necessary to decide this issue.

IV.  CONCLUSION

In conclusion, the decision to deny benefits in this case shall be reversed and this case shall be remanded for further proceedings, pursuant to sentence four, for the reasons set forth in this memorandum and order.

**IT IS SO ORDERED.**

Dated this 23rd day of January, 2009 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge